# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2013

No. 13-70010

Lyle W. Cayce
Clerk

BERNARDO ABAN TERCERO

Petitioner - Appellant

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A Texas jury sentenced Bernardo Aban Tercero to death for a murder during the course of a robbery. Tercero challenges his capital sentence in federal court, claiming that he is exempt from execution pursuant to *Roper v. Simmons*.[1] The district court denied habeas relief and Tercero now seeks a Certificate of Appealability ("COA"). We deny Tercero's application.

---

[1] 543 U.S. 551 (2005).

No. 13-70010

# I

On March 31, 1997, Tercero and an accomplice forced their way into the back door of a dry-cleaning establishment.[2]  While his accomplice held the employees at gunpoint in the back of the store, Tercero went to the front of the store.[3]  There, Tercero fought a customer, Robert Berger.  In the struggle, Tercero shot and killed Berger, in front of Berger's three year old daughter.[4]  Tercero and his accomplice then fled with two cash registers.[5]

After a several-month investigation, Texas charged Tercero with capital murder committed during the course of a robbery.  By then, Tercero had fled the United States to Nicaragua, his country of origin.  While in Nicaragua, Tercero is alleged to have been involved in a series of violent crimes, including several robberies, shootings, and a kidnapping.[6]  Soon thereafter, the United States obtained a federal warrant for Tercero based on his flight to avoid prosecution.  Tercero was arrested upon his re-entry into the United States two years later.

At trial, Tercero's defense focused on a lack of a specific intent to kill.  Although he acknowledged that he shot Berger, Tercero testified that Berger tried to grab the gun from him and, in the course of the ensuing struggle, he accidently shot Berger.  Having conceded guilt on the aggravated robbery, Tercero argued to the jury that he should be convicted of felony murder, rather than capital murder.[7]

---

[2] *Tercero v. Texas*, No. 73,992, at *2 (Tex. Crim. App. Oct. 18, 2002) (unpublished).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* at *4.  More specifically, while in Nicaragua, Tercero is alleged to have kidnapped a four-year-old boy, shot a store owner, and shot at pursuing police officers.  *Id.*

[7] *See Tercero v. Thaler*, No. 4:06cv3384, 2013 WL 474769 at *1 (S.D. Tex. Feb. 7, 2013).

No. 13-70010

The State presented witnesses who contradicted Tercero's version of the facts, including one witness who testified that Tercero initially assaulted Berger and another who testified that Tercero said he had shot Berger because Berger made him angry and could identify him.

The trial court instructed the jury to consider the lesser-included offenses of felony murder and aggravated robbery. The jury convicted Tercero of capital murder. A separate penalty phase hearing followed. Under controlling Texas law at the time, the jury had only two sentencing options for a capital murder conviction: the death penalty or life with the possibility of parole after 40 years. The State presented substantial evidence of Tercero's criminal history, including his two prior domestic convictions for theft and his string of violent crimes in Nicaragua. Additionally, the State focused on the brutality of Tercero's murder of Berger.

Tercero presented eight witnesses, including: Tercero's family members from Nicaragua; a jail employee; and, a jail chaplain. Tercero's family members testified that he had a good general character and that they believed he was capable of rehabilitation. The jail employee testified that Tercero had been peaceful and non-violent while awaiting trial. The jail chaplain testified that Tercero had demonstrated remorse for his crimes and was seeking a relationship with God.

The jury was instructed to answer two special questions, addressing (i) whether Tercero presented a continuing threat to society and (ii) whether taking into account all of the evidence—including the circumstances of the offense, Tercero's character and background, and Tecero's moral culpability—there were sufficient mitigating circumstances to warrant the imposition of life imprisonment instead of the death penalty. The jury answered yes to the first question and no to the second. Accordingly, the trial court imposed the death sentence.

No. 13-70010

Soon thereafter, Tercero sought direct review on six points of error. The Texas Court of Criminal Appeals ("CCA") affirmed his conviction and sentence. While this direct appeal was pending, Tercero filed his first state application for habeas corpus relief. Two years later, Tercero filed, *pro se*, a purported amendment to his habeas application.

The state habeas trial court adopted the State's proposed findings of fact and conclusions of law, and recommended that the CCA deny relief. The CCA adopted this recommendation and denied relief. In addition, the CCA treated the *pro se* amendment as a subsequent application, and dismissed it as an abuse of the writ because it failed to satisfy one of the enumerated exceptions to Texas's bar on successive petitions.

On October 24, 2006, Tercero filed a timely *pro se* federal habeas petition. The district court appointed counsel who subsequently filed an amended petition, adopting the *pro se* petition and adding additional grounds for relief. Included among the various grounds for relief was the *Roper v. Simmons*[8] claim at issue here, wherein Tercero claims that he is ineligible for the death penalty because he was only 17 years old when he committed the murder. This claim, as well as several others, not at issue here, had not been presented to the state courts. The district court stayed the federal habeas action to give Tercero the opportunity to exhaust these new claims in the state courts.

Following the filing of a successive state habeas application raising only the *Roper* claim, the CCA granted leave to proceed with the successive habeas application and remanded the matter to the state trial court.

In his successive state habeas application, Tercero included two pieces of evidence in support of his *Roper* claim: (i) a birth certificate purporting to show

---

[8] 543 U.S. 551 (2005) (holding that defendants under the age of 18 at the time of a capital crime are categorically excluded from the death penalty).

4

No. 13-70010

an August 20, 1979 date of birth for Tercero[9] and (ii) transcript from his mother's trial testimony.[10] In its response, the State included the entire record that had been developed in the district court prior to the stay. This included evidence filed by both the State and Tercero. First, this included testimony and evidence from Tercero's original trial, including: (i) a translated birth certificate from Posoltega, Nicaragua, showing that Tercero was born on August 20, 1977;[11] (ii) a Nicaraguan police report that listed Tercero's age as 22 when he was arrested in August, 1998;[12] (iii) testimony from family members about Tercero's age that suggested that he was over the age of 18 at the time of the murder;[13] (iv) Tercero's testimony that he came to the United States in 1993 when he was 17;[14] and, (v) Tercero's testimony that he was 24 years old at the time of trial in October 2000.[15] Second, it contained evidence the State obtained with the assistance of the Fraud Prevention Unit at the U.S. Embassy in Nicaragua, including: (i) a Nicaraguan certificate indicating that the 1979 birth certificate was modified on October 20, 2006;[16] (ii) a second Nicaraguan birth certificate showing a August 20, 1976, birth date;[17] (iii) a document created in July 14,

---

[9] Supplemental State Habeas Record at 11. A birthdate of August 20, 1979 would make Tercero 17 years old when he committed the murder.

[10] *Id.* at 14-17. This transcript was offered to show that Tercero's parents were the same as those listed on the 1979 birth certificate.

[11] Trial Transcript, Vol. 27, DX-3.

[12] *Id.*

[13] *See Tercero*, 2013 WL 474769 at *8 n.12 (cataloging testimony of Tercero's family members).

[14] Trial Transcript Vol. 19 at 19, 72.

[15] *Id.* at 18.

[16] R 231.

[17] R 229.

No. 13-70010

2006, reflecting that a Nicaraguan judge ordered the inscription on the 1979 birth certificate to be changed to indicate an inscription date of January 7, 1980 and a birth date of August 20, 1979.[18]  Third, the record contained the affidavit of Tercero's investigator Norma Villanueva, which included undated and unnotarized declarations from family members and friends in Nicaragua, who alleged (i) that Tercero's mother had an older son named Bernardo Aban Tercero born on August 20, 1976, who died by scorpion bite when he was two years old, and (ii) that Tercero was born on August 20, 1979, and given the same name as his older brother.[19]  In addition to this evidence from the district court record, the State also submitted the following evidence to the state habeas court: (i) Tercero used a birth certificate showing a birth date of August 20, 1977 when he obtained a Texas identification card in 1994;[20] (ii) Tercero's criminal history records indicate a birth date of August 20, 1976 or 1977;[21] (iii) when Tercero was previously arrested in Harris County, he gave a false name, but a birth date of August 20, 1977;[22] (iv) the United States Immigration and Naturalization Service charged Tercero with unlawful entry in 1996 and 1999, using birth dates of August 20, 1976 and 1977;[23] (v) arrest records in Hidalgo County, Texas that included a birth date of August 20, 1976; and, (vi) an FBI report stating that

---

[18] R 233.

[19] Supplement State Habeas Record at 202-20.  In addition, Ms. Villanueva alleges in her affidavit that Tercero's parents never registered his older brother's death and the graveyard in which the older brother was buried was destroyed by a mudslide caused by Hurricane Mitch.

[20] *Id.* at 262.

[21] *Id.* at 265-70.

[22] *Id.* at 275-93.

[23] *Id.* at 298-99.

during a August 26, 1999 interview with an FBI special agent, Tercero stated that his birth date was August 20, 1976.[24]

After considering the parties' paper submissions, and without a hearing, the state trial court adopted the State's proposed findings of fact and conclusions of law and recommended that the petition be denied. The CCA adopted the state trial court's recommendation, finding that Tercero "has failed to show by a preponderance of the evidence that he was younger than 18 years of age when he committed the instant offense," and denied the petition.[25]

Tercero filed a second amended federal habeas petition in the district court that adopted his prior arguments and again sought relief on his *Roper* claim. The district court held that the state habeas court's adjudication of the *Roper* claim was an adjudication of the merits and evaluated the state's decision under the deferential lens of 28 U.S.C. § 2254. Applying this standard, the district court concluded that the petitioner failed to show that a "reasonable factfinder must conclude that the state court's determination of the facts was unreasonable."[26] Accordingly, the district court denied Tercero's petition and declined to issue a COA.

## II

Tercero now seeks a COA solely on the *Roper* claim. Tercero argues (i) that the state habeas court's decision was not an "adjudication on the merits" under 28 U.S.C. § 2254(d), and (ii) that even if it was an adjudication on the merits, the state habeas court's decision was an "unreasonable determination of the facts in light of the evidence presented." The State disagrees, arguing (i)

---

[24] *Id.* at 321.

[25] *Ex parte Tercero*, No. WR-62593-03, 2010 WL 724405 (Tex. Crim. App. Mar. 3, 2010) (unpublished).

[26] *Tercero*, 2013 WL 474769 at *17.

that the state habeas court's decision was an adjudication on the merits, and (ii) that the state decision was a reasonable determination of the facts in light of the evidence presented. Accordingly, the State urges that a COA should not issue.

To appeal, a § 2254 petitioner must first obtain a COA.[27] A COA should issue where a petitioner makes "a substantial showing of the denial of a constitutional right."[28] Where, as here,[29] the district court "has rejected the constitutional claims on the merits," the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[30] Although the "question of whether a COA should issue is a threshold inquiry that requires an overview of the claims in the habeas petition and a general assessment of their merits," a full consideration of the merits is neither warranted nor permitted.[31] Although the nature of a death penalty case "is not itself sufficient to warrant the issuance of a COA," "in a

---

[27] *See* 28 U.S.C. § 2253(c)(1)(A).

[28] 28 U.S.C. § 2253(c)(2).

[29] Tercero argues, without legal or factual support, that the district court ruled on a procedural basis. A review of the district court's memorandum and order makes clear that the district court ruled on the merits. In that memorandum and order, the district court held that "[t]his Court agrees with the state court that in light of the ample documentation of and [Tercero's] prior continual assertion of a birthdate establishing that he was well over the age of eighteen at the time of the offense, the alleged birth record . . . asserting a birthdate of August 20, 1979 is unpersuasive and incredible. . . . Tercero has not shown that the state habeas process resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . . The Court will deny Tercero's *Roper* claim." *Tercero*, 2013 WL 474769 at \*17 (internal quotation marks and citations omitted).

[30] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[31] *Kunkle v. Dretke*, 352 F.3d 980, 985 (5th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

death penalty case 'any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor.'"[32]

## III

We first resolve Tercero's claim that the district court improperly applied Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") deference to the CCA's decision on the *Roper* claim. Tercero argues that because the state court did not hold an evidentiary hearing, the decision of the state habeas court does not constitute an adjudication on the merits under § 2254(d), and accordingly, should not be accorded any deference.

We are mindful that at the COA stage, we must ask "whether the District Court's application of AEDPA deference . . . was debatable among jurists of reason."[33] Typically, AEDPA mandates deference to state court proceedings and it is "axiomatic that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief."[34] Nonetheless, in the context of *Atkins v. Virginia*,[35] we explained that where there is "a significant substantive liberty interest [at stake]," that liberty interest "entitles the petitioner to a set of core procedural due process protections: the opportunity to develop and be heard on his claim that he is ineligible for the death penalty."[36] And there is no sound basis for concluding that such protections do not extend to other instances, such as the *Roper* claim at issue here, where a petitioner claims to be ineligible for the

---

[32] *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)).

[33] *Miller-El*, 537 U.S. at 341.

[34] *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004) (per curiam) (internal quotation marks and citation omitted).

[35] 536 U.S. 304 (2002).

[36] *Blue v. Thaler*, 665 F.3d 647, 657 (5th Cir. 2011) (discussing the substantive liberty interest at stake when petitioner claims to be ineligible for the death penalty under *Atkins*).

death penalty. Such "core procedural due process protections" do "not mean that states must give hearings to all persons with" claims that they are ineligible for the death penalty; indeed, "states retain discretion to set gateways to full consideration and to define the manner in which habeas petitioners may develop their claims."[37]  But "if a state court dismisses a prima facie valid" claim that petitioner is ineligible for the death penalty "without having afforded the petitioner an adequate opportunity to develop the claim, it has run afoul of the Due Process Clause[.]"[38] Importantly, petitioners are not guaranteed evidentiary hearings because "[d]ue process does not require a full trial on the merits"; instead, petitioners are guaranteed only the "opportunity to be heard."[39]  In other words, the state court's decision is only deprived "of the deference normally due" where the state court has failed "to provide [petitioner] with the opportunity to develop his claims[.]"[40]

Tercero claims that the state habeas court denied him an adequate opportunity to develop his claim because it did not afford him an evidentiary hearing.  The district court rejected this argument, explaining that:

> [T]he state court afforded Tercero all the process he was due. . . . The state courts allowed Tercero to file a successive habeas application and did not limit the evidence he could attach to that pleading.  Tercero chose to emphasize only a portion of the information he had amassed on federal review.  Even though the State attached to its response the full breadth of evidence developed, Tercero did not signal to the state courts that the federal evidence

---

[37] *Id.*

[38] *Id.*

[39] *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007).

[40] *Id.* at 358.

needed airing in a state hearing. While asking the state courts to provide resources to establish his claims, Tercero never gave the state courts an indication that he wished to resolve inconsistences between the various birth certificates and the unusual story about his older brother. The State courts gave Tercero an opportunity to be heard, and he chose to limit what the courts would consider.[41]

Thus, the district court found that although no evidentiary hearing was held, the state court provided Tercero with a full opportunity to be heard. In this regard, the present case is readily distinguishable from *Winston v. Pearson*,[42] the principal case on which Tercero relies. There, the Fourth Circuit re-affirmed its prior decision that the Virginia state court's decision was not an adjudication of the merits where it had "denied, without explanation, [a] motion for discovery and an evidentiary hearing to further develop the factual basis of his claims."[43] In contrast, Tercero never requested an evidentiary hearing in the state court, and, in any event, had already substantially developed his claim in the district court prior to remand. The state habeas courts gave Tercero the "opportunity to be heard." Accordingly, we hold that reasonable jurists would not find debatable the district court's conclusion that the state habeas court adjudication was an adjudication on the merits that warrants AEDPA deference.

## IV

Tercero argues that even if the state habeas court decision is an adjudication on the merits, it was an unreasonable determination of the facts in light of the evidence presented in the state habeas proceedings. Tercero argues

---

[41] *Tercero*, 2013 WL 474769 at *14.

[42] 683 F.3d 489 (4th Cir. 2012).

[43] *Winston v. Kelly*, 592 F.3d 535, 548 (4th Cir. 2010).

that the state habeas court failed to credit the evidence in his favor, and gave too much credit to the State's evidence, which he argues is untrustworthy.

In *Roper*, the Supreme Court held that juveniles under 18 are categorically excluded from the death penalty.[44] As the Court explained, the "age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest."[45] Accordingly, to prevail on a *Roper* claim, a petitioner must show that he was under the age of 18 at the time of the commission of the death eligible crime.[46]

We remain cognizant of the deferential standards imposed by AEDPA. Under § 2254(d), the district court may grant relief "only if it determines that the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court,' or that the state court's adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[47] Moreover, under the § 2254(e)(1), the district court "was obliged to presume that

---

[44] 543 U.S. at 573.

[45] *Id.* at 574.

[46] Not surprisingly, there is a dearth of case law on *Roper* claims. A brief review of relevant circuit cases makes clear that Texas commuted the death sentences of petitioners who were excluded from the death penalty by *Roper*. *See, e.g.*, *Dickens v. Dretke*, 136 F.App'x 675, 675-76 (5th Cir. 2005) ("In light of the United States Supreme Court's recent decision in *Roper v. Simmons*, Texas Governor Rick Perry has commuted Dickens' death sentence to life imprisonment."); *Jones v. Dretke*, 137 F.App'x 718 (5th Cir. 2005) (same); *Cobb v. Dretke*, 138 F.App'x 702 (5th Cir. 2005) (same).

[47] *Ramirez*, 398 F.3d at 694 (quoting 28 U.S.C. § 2254(d)(1) and (2)).

12

the [CCA's] factual findings were correct unless [petitioner] furnished 'clear and convincing evidence' otherwise."[48]

Applying these standards, the district court denied Tercero's *Roper* claim. Looking at the full record before the state habeas court, the district court explained:

> The suspicious timing of Tercero's *Roper* claim, the problematic and evolving tale of his alleged older sibling, the weak evidentiary foundation for his arguments, and the pervasive and consistent pre-*Roper* information makes this not a case where a reasonable factfinder *must* conclude that the state court's determination of the facts was unreasonable. This Court agrees with the state court that in light of the ample documentation of and [Tercero's] prior continual assertion of a birthdate establishing that he was well over the age of eighteen at the time of the offense, the alleged birth record . . . asserting a birthdate of August 20, 1979 is unpersuasive and unreasonable. Tercero has not shown that the state habeas process resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[49]

We agree. In essence, Tercero asks that we ignore the substantial record evidence in this case that predates *Roper*, and to instead credit the suspect evidence that was unearthed shortly after the *Roper* opinion issued. It is uncontroverted fact that for over a decade, Tercero consistently presented himself as having been born on August 20, 1976 or 1977. This is supported by his own testimony and his family's testimony at trial, as well as his arrest and

---

[48] *Id.*

[49] *Tercero*, 2013 WL 474769 at *17 (internal quotation marks and citations omitted).

No. 13-70010

immigration records.  Given the substantial evidence corroborating Tercero's earlier birthdate and the incredible nature of Tercero's evidence to the contrary, we hold that no reasonable jurist would find debatable the district court's decision that Tercero failed to show that the state habeas process "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[50]

## V

For these reasons, we DENY Tercero's application.

---

[50] 28 U.S.C. § 2254(d)(2).