# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70022

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2017

Lyle W. Cayce
Clerk

KWAME A. ROCKWELL,

Petitioner–Appellant,

versus

LORIE DAVIS, Director,
 Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, SMITH, and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Kwame Rockwell seeks a certificate of appealability ("COA") to challenge the denial of habeas corpus relief. Because reasonable jurists would not debate that the district court acted properly in denying Rockwell's claims, we deny his application for a COA.

No. 16-70022

I.

A Texas jury convicted Rockwell of murdering a gas-station clerk, Daniel Rojas, in the course of a robbery. The jury sentenced Rockwell to death. The Texas Court of Criminal Appeals affirmed the conviction and death sentence.[1] Rockwell filed a state petition for writ of habeas corpus, which was denied.[2] He filed a federal habeas petition, which the district court denied.[3]

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal. Federal law requires that he first obtain a COA from a circuit justice or judge." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing 28 U.S.C. § 2253(c)(1)). "A COA may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Id.* (quoting 28 U.S.C. § 2253(c)(2)). "Until the prisoner secures a COA, the Court of Appeals may not rule on the merits of his case." *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

"The COA inquiry . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller-El*, 537 U.S. at 327). Federal courts cannot grant habeas relief if a claim was adjudicated on the merits in state court unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] That court's opinion includes a thorough discussion of the facts. *See Rockwell v. State*, No. AP-76,737 slip op., 2013 WL 6529575 (Tex. Crim. App. Dec. 11, 2013) (not designated for publication), *cert. denied*, 134 S. Ct. 2724 (2014).

[2] *See Ex Parte Rockwell*, No. WR-80,232–01 slip op. (Tex. Crim. App. Dec. 17, 2014) (per curiam) (not designated for publication), *cert. denied*, 136 S. Ct. 36 (2015).

[3] *See Rockwell v. Davis*, 4:14-CV-1055-O, 2016 WL 4398378 (N.D. Tex. Aug. 18, 2016).

No. 16-70022

determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[4]

Rockwell claims that reasonable jurists would debate (1) whether his trial counsel's decision not to present evidence that he suffers from schizophrenia constitutes ineffective assistance of trial counsel ("IATC"), (2) whether his trial counsel's decision not to present evidence of his steroid use constitutes IATC, (3) whether he is eligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), in light of his purported mental illness, and (4) whether Texas's death-penalty statute unconstitutionally forbids juries from considering mitigating evidence. The state habeas court and the district court rejected each of these claims.[5]

## II.

## A.

Rockwell first brings two IATC claims, on which he must show "both that counsel performed deficiently and that counsel's deficient performance caused

---

[4] In deciding whether to grant a COA, we engage in "an overview of the claims in the habeas petition and a general assessment of their merits," *Miller-El*, 537 U.S. at 336, but "without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. at 773 (quoting *Miller-El*, 537 U.S. at 336).

[5] Rockwell also asserts that the state habeas court's failure to adhere to Texas criminal procedural laws deprived him of due process. But "[i]t is well-settled that 'infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.'" *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) (quoting *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).

Rockwell additionally claims that the alleged procedural deficiencies deprive the state habeas court's findings of fact and conclusions of law of the deference due under Section 2254. But because our precedent does not require a full and fair hearing, *see Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001), and because the record reflects that Rockwell had ample opportunity to "develop his claims" before the state habeas court, *see Tercero v. Stephens*, 738 F.3d 141, 148 (5th Cir. 2013), reasonable jurists would not debate whether the district court properly applied Section 2254 deference in its review of the state habeas court's findings of fact and conclusions of law.

No. 16-70022

him prejudice." *Buck*, 137 S. Ct. at 775 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "*Strickland*'s first prong sets a high bar." *Id.*[6] Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In federal habeas proceedings, a petitioner must also show that "the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

1.

Rockwell's first claim is that his lawyers were ineffective because they failed adequately to investigate his purported schizophrenia and present evidence of it to the jury. Rockwell began exhibiting symptoms of mental illness shortly after his incarceration. Jail medical staff examined him and monitored his symptoms. Ultimately, Rockwell was diagnosed with schizophrenia and was prescribed Haloperidol, an anti-psychotic drug.

Trial counsel chose not to highlight those facts at sentencing but, instead, focused on Rockwell's character.[7] Jurists of reason could not debate that that decision met the standard for effective representation.

Over the course of the litigation, trial counsel retained several mental-health professionals to examine Rockwell.[8] Those experts either found evidence that Rockwell was exaggerating his symptoms, or they failed to find

---

[6] *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task.").

[7] Trial counsel called 52 witnesses to testify on Rockwell's behalf during the sentencing phase.

[8] *See Smith v. Cockrell*, 311 F.3d 661, 676–77 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004) ("Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying

evidence that he suffered from schizophrenia.[9] Their findings comported with the evidence trial counsel gathered from interviewing Rockwell and his family members, friends, and acquaintances.

Even the two mental-health experts whom Rockwell cites favorably, psychologist Dr. Holly Miller and psychiatrist Dr. Michael Fuller, found evidence that Rockwell was malingering. If trial counsel had portrayed Rockwell as mentally ill, the prosecution would have presented evidence of such apparent malingering. Moreover, Rockwell's suggested approach would have made damaging information discoverable, including information about his past violent acts.[10]

The state habeas court rejected the claim of failure to investigate and present evidence of schizophrenia. No reasonable jurist would find the district court's assessment of this claim debatable or wrong.[11]

---

that a reviewing court will substitute its own judgment, with the inevitable hindsight that a bad outcome creates, and rule that his performance was substandard for doing so.").

[9] Trial counsel retained a psychologist, Dr. Kelly Goodness, who reported that "[a]ll mental health professionals worth anything have identified Rockwell as malingering [mental illness]. It would only be more hurtful than helpful to have mental health testimony." Trial counsel retained a clinical psychologist and neuropsychologist, Dr. Michael Chafetz, who found some indications of psychosis but also reported that "this does not fit the usual symptomology, and there is some mild evidence of over-reporting." At the urging of the state trial court, psychologist Dr. Antoinette McGarrahan also examined Rockwell and reported that his supposed hallucinations "were all highly suspect." Jail psychiatrist Dr. Xiaoyan Wu examined him as well and reached the same conclusion.

That said, not all of the mental-health professionals who examined Rockwell found evidence that he was over-reporting his symptoms. Trial counsel retained a forensic psychologist, Dr. Barry Norman, to determine whether Rockwell was competent to stand trial. Dr. Norman did not find evidence of over-reporting. He also determined that though Rockwell "displayed no evidence of a disorder which would significantly impair his current understanding of reality," he may have been suffering from adjustment disorder.

[10] For example, the prosecution could have learned that Rockwell once choked a woman until she lost consciousness.

[11] As noted above, Rockwell must show that trial counsel's representation was not only deficient but also prejudiced Rockwell's defense—and that the state trial court's rulings on

No. 16-70022

2.

Rockwell's second claim is that his lawyers were ineffective because they did not adequately investigate his steroid use or present evidence of it to the jury. Trial counsel retained Dr. Dwain Fuller, a forensic toxicologist, for advice on whether to present evidence of steroid use. Fuller advised against it, explaining that steroids do not cause people to commit the sorts of crimes that Rockwell committed. That advice, combined with concerns that Rockwell's suggested witnesses would be subject to devastating cross-examination and that information about his use of illegal steroids would undermine the defense's character arguments, convinced counsel not to pursue the steroid theory.

Counsel could have retained a more supportive expert but was not required to do so.[12] Nor was counsel required to call witnesses to testify about the effect steroids may have had on Rockwell's behavior. Accordingly, jurists of reason could not debate the district court's decision to defer to the state habeas court's ruling on this claim.[13]

B.

Rockwell's third claim is that *Atkins* bars states from executing mentally ill persons. The state habeas court's rejection of this claim was reasonable. In *Atkins*, 536 U.S. at 320–21, the Court held that executing "mentally retarded" persons violates the Eighth Amendment's prohibition on "cruel and unusual"

---

these matters were unreasonable. Because we find that the state habeas court reasonably held that trial counsel's decision not to pursue the mental-illness theory did not constitute deficient representation, we do not need to reach the prejudice prong of the *Washington* test.

[12] *See Perry v. Quarterman*, 314 F. App'x 663, 668 (5th Cir. 2009) (explaining that trial counsel is not required to "shop for an expert").

[13] Because the state habeas court reasonably held that trial counsel's decision not to pursue the steroid theory was not deficient representation, we do not need to reach the prejudice prong of the *Washington* test.

6

punishment. Nothing in *Atkins*, however, bars states from executing those who are mentally ill, and "Fifth Circuit precedent . . . forecloses" the notion "that the Eighth Amendment prohibits . . . execution [of the] mentally ill." *Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014).[14] The state habeas court did not misapply Supreme Court precedent by refusing to extend *Atkins* to Rockwell's case, nor did it violate any other clearly established federal law. No reasonable jurist would debate this conclusion.

## C.

Finally, Rockwell claims that a Texas statute unconstitutionally bars juries from considering mitigating evidence that does not reduce a defendant's "moral blameworthiness." *See* TEX. CODE CRIM. PROC. art 37.071, § 2(f)(4). We have rejected similar arguments multiple times.[15] The statute does not unconstitutionally restrict the mitigating evidence that Texas juries are allowed to consider. In fact, the jury instructions required the jury to "consider all evidence admitted at the guilt or innocence stage and the punishment stage," a line that comes directly from the statute. *See id.* § 2(d)(1). No reasonable jurist would debate the district court's ruling on this claim.

The application for a COA is DENIED.

---

[14] Execution of the mentally ill is carefully distinguished from execution of the insane. *Mays*, 757 F.3d at 219 n.24.

[15] *See, e.g.*, *Blue v. Thaler*, 665 F.3d 647, 665–66 (5th Cir. 2011); *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001).